## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**GEORGE LEONARD WERNI, JR.,**    :    **Civil No. 1:21-CV-127**

       :        : 

        **Plaintiff**    : 

       : 

   **v.**    : 

       :    **(Magistrate Judge Carlson)**

**KILOLO KIJAKAZI,**    : 

**Acting Commissioner of Social Security[1],**   : 

       : 

        **Defendant**    : 

## MEMORANDUM OPINION

### I.    Introduction

George Werni applied for Social Security benefits in March of 2019. (Tr. 14). At that time, Mr. Werni's presenting complaint was a left shoulder rotator cuff injury. As Mr. Werni explained on April 29, 2019 in his adult function report, he was unable to work because his "left shoulder can't be fixed." (Tr. 248). Notably Werni, through his counsel, disclaimed any disability based upon emotional impairments before the ALJ, stating instead that "this is a physical case." (Tr. 55).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

The ALJ who reviewed this case agreed that Werni was not experiencing any disabling emotional impairments, but found based upon the greater weight of the evidence that the plaintiff could perform a limited range of light work with specific restrictions regarding the use of his left arm. Considering all of this evidence, the ALJ then denied this disability application. (Tr. 11-23).

Mr. Werni now appeals this decision, arguing that the ALJ erred in considering the effects of his severe and non-severe impairments and in fashioning a residual functional capacity (RFC) assessment which concluded that he could perform a limited range of light work. Werni also argues that the ALJ erred in discounting a treating source opinion which stated that the plaintiff suffered from profound depression. Mr. Werni invites us to find that the evaluation of this medical opinion was flawed, even though Werni's own treatment records disclosed no mental impairments, Werni through his counsel denied basing this claim upon mental impairments at the time of the hearing before the ALJ, and this single medical opinion was rebutted by the testimony and opinions of every other medical expert who considered Werni's emotional state.

In considering Mr. Werni's appeal of this disability determination, we are enjoined to apply a deferential standard of review to Social Security appeals, one which simply calls for a determination of whether substantial evidence supported

the ALJ's decision. Mindful of the fact that, in this context, substantial evidence is a term of art which "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On March 14, 2019, George Werni applied for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act, alleging an onset of disability on November 15, 2018. (Tr. 14). Werni was born in October of 1968 and was 50 years old at the time of the alleged onset of his disability. (Tr. 20). He had a limited education, and previously had worked as a forklift operator. (Tr. 21).

The precipitating event which led to the alleged onset of Werni's disability was a fall he suffered in November of 2018, in which he injured his left shoulder. Werni was seen by treating physicians at Wellspan for this injury on December 6, 2018, at which time they diagnosed him as suffering from a left shoulder rotator cuff injury. (Tr. 43-45). This preliminary diagnosis was confirmed through an MRI examination in January of 2019. (Tr. 40-43).

Following these MRI results, Dr. Richard Slagle, one of Werni's treating physicians, conducted an examination of Werni on February 6, 2019. During this examination Werni displayed obvious weakness in his left shoulder on resisted abduction and external rotation. (Tr. 39). However, he had good passive forward elevation abduction and internal rotation. (Id.) Dr. Slagle also discussed Werni's work limitations explaining that:

> The patient is fairly functional. We discussed his work situation which can be very limited with doing any physical labor reaching overhead or out in front. Work needs to be from floor to waist.

(Id.)

One month later, on  March 13, 2019, Dr. Slagle met again with the plaintiff and informed him that he had been diagnoses with a "massive rotator cuff tear left shoulder." (Tr. 38). This rotator cuff injury was treated through injection. (Id.) At that time Werni "inquir[ed] about disability for the shoulder." (Id.)

Werni continued to treat this left shoulder rotator cuff injury in a conservative fashion throughout the relevant time period. Thus, by November of 2020, Werni's physicians were reporting that the plaintiff "does not want to have surgical treatment." (Tr. 33). Instead, Werni opted for a home exercise program, while informing his caregivers that he "has applied previously for disability and he plans to apply again." (Id.)

4

This left shoulder injury was Werni's primary physical complaint and was the focus of his March 2019 disability application. As Mr. Werni explained on April 29, 2019 in his adult function report, he was unable to work because his "left shoulder can't be fixed." (Tr. 248). Despite this shoulder injury, Werni acknowledged that he could perform many functions of daily living. Thus, Werni reported that he could shower, cook, clean, do laundry, dress with some difficulty, drive, touch his toes, bend down to pick up objects, do yardwork, purchase groceries, handle his own finances, walk a half mile, and complete tasks. (Tr. 55-66, 248-55). Indeed, the only limitations that Werni described were that he "can't use left arm well," and was limited in lifting, reaching, and using his hands. (Tr. 253).

Notably, Werni did not identify any emotional or psychological disabilities in either his adult function report or his ALJ hearing testimony. (Tr. 55-66, 248-55). Moreover, the treatment records of Werni's primary care physician throughout 2019 documented that he consistently displayed normal mood, affect, and judgment.[2] Thus, even as Werni sought the assistance of these caregivers in processing his disability claim, he presented to those caregivers with a normal mood and affect. For

---

[2] These reports of normal mood, affect and judgment can be found throughout Werni's treatment records including during clinical encounters on May 10, 2019 (Tr. 356, 508); June 24, 2019 (Tr, 492); October 3, 2019 (Tr. 465); October 23, 2019 (Tr. 440); November 22, 2019 (Tr. 416); and December 9, 2019. (Tr. 447).

example, on October 3, 2019, Werni was seen by Wellspan medical staff "to get my papers from a lawyer filled out." (Tr. 464). Yet, even as Werni met with caregivers on October 3, 2019 to complete this disability paperwork, it was noted that his mood, affect, and behavior were all normal. (Tr. 465). Rather, the record reveals that Werni's first request for a psychiatric referral was made on March 9, 2020 when Werni "state[d] his lawyer advised he should be seen by psychiatry." (Tr. 576).

As part of the disability assessment process Werni's medical records were examined by state agency medical experts on July 19, 2019 (Tr. 73-84), and February 21, 2020. (Tr. 99-126). With respect to Werni's mental state, during these two reviews the state agency experts, Dr. Urbanowicz and Dr. Jonas, both concluded that Werni was experiencing a non-severe depression. (Tr. 78, 106). As for Werni's physical impairments, the medical opinions of Drs. Lateef and Hollick, the two state agency experts, were that Werni retained to capacity to do some light work with limitations on the use of his left arm. (Tr. 79-84, 107-12).

For his part, Werni offered a single medical opinion in support of his disability claim, albeit an opinion which addressed only his emotional state, was internally inconsistent, conflicted with the clinical evidence, and was contradicted by every other expert's opinion. On October 9, 2019, Dr. Aaron Lane, a treating physician submitted a mental residual functional capacity assessment relating to Werni. (Tr.

406-10, 520-24). Notably, Dr. Lane's assessment was limited to Werni's mental state. The doctor did not assert that Werni's physical impairments were disabling. In this assessment, Dr. Lane stated that Werni suffered from recurrent major depression. (Tr. 406). However, when assessing the impact of this depression upon Werni, Dr. Lane stated that for the most part this condition would result in only mild to moderate symptoms. (Tr. 406-10). Dr. Lane also found that Werni's Global Assessment of Functioning score ranged from 52 to 65, scores that were consistent with no more than a mild to moderate degree of impairment.[3]

---

[3] A GAF score, or a Global Assessment Functioning scale, was a psychometric tool which took into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000. ("DSM-IV-TR"). In this regard, GAF scores "in the range of 61–70 indicate 'some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning.' Diagnostic and Statistical Manual of Mental Disorders ('DSM IV') 34 (American Psychiatric Assoc. 2000). GAF scores in the 51–60 range indicate moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 Fed.Appx. 898, 900 (3d Cir. 2002). DaVinci v. Astrue, 1:11-CV-1470, 2012 WL 6137324 (M.D. Pa. Sept. 21, 2012) report and recommendation adopted, Davinci v. Astrue, 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012). "A GAF score of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34. A score of 50 is on the borderline between serious and moderate symptoms." Colon v. Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006). See Shufelt v.

Dr. Long's assessment was at odds with every other medical opinion which evaluated Werni's mental state. Moreover, Dr. long's findings were inconsistent with Werni's treatment notes, which consistently recorded that the plaintiff displayed a normal mood, affect and judgment.

It was on this medical record that Werni's disability application came to be heard by the ALJ.

## A. **The ALJ's Hearing and Decision**

The ALJ conducted a hearing in Werni's case on August 27, 2020. (Tr. 48-71). During this hearing, the ALJ received testimony from Werni and a vocational

---

Colvin, No. 1:15-CV-1026, 2016 WL 8613936, at *2 (M.D. Pa. Sept. 15, 2016), report and recommendation adopted sub nom. Shulfelt v. Colvin, No. 1:15-CV-1026, 2017 WL 1162767 (M.D. Pa. Mar. 29, 2017). A GAF score of 31-40 signifies some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. A GAF scores as low as 30 typically indicate behavior that is considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or an inability to function in almost all areas. *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000. ("DSM-IV-TR").

Jones v. Colvin, No. 1:16-CV-1535, 2017 WL 4277289, at *2 (M.D. Pa. Sept. 25, 2017), report and recommendation adopted sub nom. Jones v. Berryhill, No. 1:16-CV-1535, 2017 WL 4314572 (M.D. Pa. Sept. 27, 2017).

expert. For his part, Werni testified that he retained the ability to dress, shower, cook, shop, do laundry and dishes, clean and vacuum, do yard work, drive, stoop, and climb stairs. (Tr. 55-60). In addition, Dr. Lily McCain, a clinical psychologist, testified at this hearing. (Tr. 51-55). In her testimony Dr. McCain stated, based upon a review of Werni's treatment records, that there was no evidence that he suffered from any major depression. According to Dr. McCain, Werni's clinical records were devoid of reports of significant mental health symptoms and replete with notations that Werni exhibited normal mood, affect, judgment, and thought content." (Id.) At the ALJ hearing, Werni declined through counsel to question Dr. McCain stating that "I think this is a physical case . . . . So I don't have any questions for this expert." (Tr. 55).

Following this hearing, on September 10, 2020, the ALJ issued a decision denying this application for benefits. (Tr. 11-23). In that decision, the ALJ first concluded that Werni met the insured requirements of the Act and had not engaged in substantial gainful activity since the alleged date of the onset of his disability in November of 2018. (Tr. 16). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Werni's COPD, asthma, diabetes, a left shoulder rotator cuff tear, and biceps tendon rupture were all severe impairments (Id.) The ALJ concluded, however, that Werni's depression and hepatitis C were not severe

9

impairments, citing to the medical record. (Tr. 17). At Step 3, the ALJ determined

that none of these impairments met or medically equaled the severity of one of the

listed impairments. (Id.)

Between Steps 3 and 4 the ALJ concluded that Werni retained the following

residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except he
> can never climb ladders/ropes/scaffolds, he can occasionally balance/crawl,
> occasionally reach with his left upper extremity, he should never
> overhead reach, and the claimant should avoid exposure
> irritants/hazards.

(Id.)

In reaching this RFC determination, the ALJ detailed Werni's treatment

history, noted the complete absence of treating source medical opinion supporting

his physical disability claims, and cited the state agency medical consensus which

found that he retained the ability to do some work. (Tr. 18-21). As for Werni's

emotional impairments, the ALJ found that the opinions of Dr. McCain and the state

agency experts had greater persuasive power than the more extreme view voiced by

Dr. Lane, stating that:

> Dr. Lane did not support why the claimant was so limited in a number
> of areas. Additionally, his opinions are inconsistent with the record,
> evidence from the impartial medical expert, who specializes in mental
> health matters. Moreover, the claimant has not indicated that he is

10

substantially limited due to mental health issues. Additionally, multiple treatment records indicate the claimant has a normal mood, affect, and behavior when examined.

(Tr. 21).

Having reached these conclusions regarding the medical clinical and opinion evidence, the ALJ found that Werni could perform jobs that existed in significant numbers in the national economy. (Tr. 21-23). Accordingly, the ALJ determined that Werni had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Werni challenges the adequacy of the ALJ's decision, arguing that the ALJ erred in considering the effects of his severe and non-severe impairments and in fashioning a residual functional capacity (RFC) assessment which concluded that he could perform a limited range of light work. Werni also argues that the ALJ erred in discounting a treating source opinion which stated that the plaintiff suffered from profound depression. This appeal is fully briefed by the parties and is, therefore, ripe for resolution. As discussed in greater detail below, having considered the arguments of counsel, carefully reviewed the record, and remaining mindful of the deferential standard of review which applies here, we conclude that the ALJ's decision is supported by substantial evidence. Accordingly, we will affirm the decision of the Commissioner denying this claim.

11

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512

F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status

of a claim requires the correct application of the law to the facts"); see also Wright

v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on

legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary

review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of

review. First, when conducting this review "we are mindful that we must not

substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d

607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.

2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather

our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the

burden of articulation demanded by the courts to enable informed judicial review.

Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the

Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable

14

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
particular "magic" words: "Burnett does not require the ALJ to use
particular language or adhere to a particular format in conducting his
analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In Hess, the court of appeals considered the question of whether

an RFC, which limited a claimant to simple tasks, adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's

argument that the language used by the ALJ to describe the claimant's mental

limitations was legally insufficient, the court of appeals rejected a *per se* rule which

would require the ALJ to adhere to a particular format in conducting this analysis.

Instead, framing this issue as a question of adequate articulation of the ALJ's

15

rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

17

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in

engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical

opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ

20

has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    Step 2 Analysis: Standard of Review

At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v.

Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities. McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a *de minimis* screening device used to cast out meritless claims. McCrea, 370 F.3d at 360; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S. at 146, 107 S.Ct. 2287. However, an alleged error in characterizing an impairment as non-severe, standing alone does not compel a remand. Quite the contrary,  it is well-settled that: "[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." Naomi Rodriguez v. Berryhill, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases). See Stancavage v. Saul, 469 F. Supp. 3d 311, 332 (M.D. Pa. 2020).

D.   **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March 0f 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning

"weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

### E.    The Decision of the ALJ Will Be Affirmed.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," Pierce, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek, 139 S. Ct. at 1154. Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the ALJ's decision that Werni was not entirely disabled.

At the outset, we find that the ALJ did not err in concluding, based upon the greater weight of the medical evidence, that Werni had the ability to perform some

26

light work with limitations on the use of his left arm. In this regard, like the ALJ, we note that Werni's disability application was bereft of any credible medical opinion support for the proposition that Werni was physically disabled due to his left rotator cuff injury. No treating source opined that this shoulder injury rendered Werni totally disabled. Quite the contrary, in February of 2019 Dr. Slagle, one of Werni's treating physicians described his physical limitations in the following terms:

> The patient is fairly functional. We discussed his work situation which can be very limited with doing any physical labor reaching overhead or out in front. Work needs to be from floor to waist.

(Tr. 39).

Further, the medical consensus among the state agency experts was that Werni retained the physical ability to perform some work with left arm limitations, and the RFC expressly incorporated the limitations on left arm use recommended by these medical sources. On these facts, it is axiomatic that:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well. See SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f)

27

require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

We also agree that substantial evidence—that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154—supported the ALJ's determination that Werni's depression and hepatitis were not severe impairments. As for Werni's reported depression, the greater weight of medical opinion evidence found that this condition was either not medically determinable or was not severe. The sole outlying opinion from Dr. Lane was appropriately discounted since the doctor's opinion was at odds with the physician's treatment notes which consistently reported that Werni displayed normal mood, affect, judgment, and behavior. On this score, it is well settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results, Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008), and an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). We further note that at the ALJ hearing, Werni declined through counsel to challenge the opinion of Dr. McCain, who discounted the severity

28

of Werni's emotional impairments, stating that "I think this is a physical case . . . . So I don't have any questions for this expert." (Tr. 55).

The ALJ also aptly concluded that Werni's hepatitis C was not a severe impairment. This conclusion drew support from substantial evidence; namely, the plaintiff's treatment records which reported in October of 2019 that his viral load was undetectable, signifying a spontaneous resolution of this condition. (Tr. 464). [4]

At bottom, Werni invites us to re-weigh the evidence and fashion a different RFC in this case. However, we are mindful that our "'review of the ALJ's assessment of the [claimant]'s RFC is deferential,' and the 'RFC assessment will not be set aside if it is supported by substantial evidence.'" Stancavage v. Saul, 469 F.Supp.3d 311, 339 (M.D. Pa. 2020). In the instant case, we find that the ALJ's assessment of the evidence complied with the dictates of the law and was supported by substantial evidence, a term of art which means less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565.

---

[4] Werni also contends that the ALJ did not adequately take into account the leg pain he experienced in crafting this RFC but the limited light work RFC fashioned by the ALJ did take these concerns into account.

This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the plaintiff's argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

For the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying this claim is AFFIRMED.

An appropriate order follows.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: November 18, 2022